IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW
MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO.20-CR-1210 JAP |
| | ) | |
| vs. | ) | |
| | ) | |
| **CHARLES BRENT JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION APPEALING DETENTION ORDER

The United States respectfully submits this response to Defendant's Motion Appealing

Magistrate's Detention Order.  As the facts discussed below will indicate, Defendant is both a

flight risk and a danger to the community, and should be detained pending trial, as was found

twice by United States Magistrate Judge Kirtan Khalsa.  As a result, Defendant's appeal should

be denied.

## I.      PROCEDURAL HISTORY

 Defendant was charged by complaint on March 16, 2020 with 26 U.S.C. § 5861(d):

Possession of An Unregistered NFA Weapon, and 18 U.S.C. 922(l): Unlawful Importation of a

Firearm.  On March 19, 202, the parties argued the issue of detention before Judge Khalsa.  At

the close of the nearly 6 hour hearing, Judge Khalsa ordered Defendant detained, based on

concern for the safety of the community, finding that the weight of the evidence was strong.

On April 16, 2020, Defendant filed a Motion for Reconsideration regarding release.  On April

29, Judge Khalsa denied said motion.  On May 3, 202, Defendant filed the instant motion and

on May 13, a federal grand jury returned an indictment charging Defendant with violations of

26 U.S.C. § 5861(d): Possession of An Unregistered NFA Weapon, 18 U.S.C. 922(l): Unlawful

Importation of a Firearm, and 18 U.S.C. § 545: Smuggling Goods Into the United States.

## II.    **FACTUAL BACKGROUND**

A.    Defendant has served in the United States Air Force since 2015. As part of both basic training and Security Forces technical school, he underwent multiple firearms trainings, to include automatic rifles and pistols. Consequently, Defendant obtained proficiency in multiple weapons and passed various tests designed to increase his combat readiness. At Kirtland Air Force Base (KAFB), training includes heavy weaponry, anti-personnel weaponry, driving military vehicles, and intruder deterrence and apprehension. KAFB additionally provided Defendant classified training to protect highly secured military assets located on base. As a member of the Weapons Systems Security Squadron, Defendant has received training above and beyond that of a typical Air Force member. Defendant's extensive and specialized training in multiple weapons, combat techniques and tactics, combined with his interest and expertise in firearms, present a far greater capacity to cause serious harm than that of the average member of the United States Air Force, and certainly more than an average citizen. As discussed more fully below, Defendant's recent activities demonstrate his imminent interest in utilizing that capacity for harm.

Defendant ordered a silencer from a website, knowing it is illegal for him to do so.  He knows this well, due to his extensive training.  Defendant also ordered other gun parts, including a part which converts a Glock into full automatic firing mode (also illegal), without seeking the required permission from the Air Force. Additionally, at his residence Defendant had three other silencers, 17 firearms that he had failed to register with the USAF, roughly 7,000 rounds of ammunition, body armor, gas masks and military communications devices that appear stolen. A search of Defendant's cell phone uncovered disturbing alt-right, anti-government and police material, racist propaganda, and other material which suggests a pre-disposition to commit a violent act. Under these circumstances, Defendant poses a risk of flight and danger to the

11

community that this Court cannot mitigate with any conditions of release – no matter how restrictive.  See 18 U.S.C. §3142(e). This Court should therefore deny Defendant's Appeal and maintain him in the custody of the U.S. Marshals Service pending trial.

      B.    Charged Offenses

The charges in the Complaint stem from conduct that occurred at Kirtland Air Force Base while Defendant was a member of the United States Air Force.  The FBI/ATF began investigating Defendant in early 2020 after Homeland Security Investigations and Customs and Border Protection agents learned that Defendant had ordered an illegal silencer and other illegal firearms parts from a website, in violation of the charges referenced above.  A lawful search of Defendant's home yielded more silencers as well as a veritable arsenal, and more items discussed below.

III.    **ARGUMENT FOR DETENTION**

This Court should order that Defendant remain in the custody of the U.S. Marshals pending trial.  Defendant poses a very serious risk that he has the knowledge and motivation to flee the country in order to avoid prosecution and imprisonment for his crimes. Defendant poses an extreme danger to the community given his extensive weapons training and plans to possess multiple illegal weapons. Given Defendant's training with weapons and combat techniques, coupled with the disturbing images stored on his phone, there are no conditions of pretrial release that would adequately mitigate Defendant's flight risk and extreme dangerousness.

      A.    Nature and Circumstances of the Offense

The criminal complaint articulates facts which indicate Defendant's intentions were dangerous: he ordered illegal weapons, to wit, a silencer, as well as parts designed to illegally convert a Glock pistol into a fully automatic machine gun. Defendant faces up to 10 years incarceration on that count alone if convicted.  See 26 U.S.C. § 5871.  Naturally, the probability of such a long term of imprisonment gives Defendant a powerful incentive to flee.

*See United States v. Munoz- Hernandez*, No. CR 12-0128 JB, 2012 U.S. Dist. LEXIS 161970, at *31-32 (D.N.M. Nov. 5, 2012)(Browning, J.)(noting that "[i]n the face of such a lengthy term of imprisonment [10 years to life], and the evidence against him, [the defendant] might be tempted to flee . . . rather than spend a good portion of his life in an American prison"). Defendant's violations of law, coupled with the anti-police and anti-government materials seized from his phone show Defendant does not respect lawful authority and will not hesitate to violate this Court's orders on any condition of release. The nature and surrounding circumstances of the charged offenses provide very compelling reasons to remand Defendant to the custody of the U.S. Marshals pending trial.

B.   Weight of the Evidence

The evidence supporting the indictment is strong. Defendant ordered illegal firearms parts to himself via a website which sourced the parts from China. Whether the website from which he purchased the silencer and conversion kit is a U.S.-based company or not, he knowingly ordered a silencer, and possessed other silencers at his residence.  USAF OSI Special Agent Nathaniel Sorenson testified at the March 19 hearing that Defendant's training and his experience in the United States Air Force provide him with unmistakable knowledge that silencers are illegal. Sorenson also testified that he had interviewed a witness who admitted going shooting with Defendant, and reporting that Defendant brought with him a rifle with the same type of silencer found in Defendant's residence on at least one occasion.  Given his extensive and specialized training and experience, Defendant cannot reasonably claim lack of knowledge that the silencers found in his residence or the ones he ordered from the website were a) silencers, and b) illegal.

The United States Air Force Office of Special Investigations (OSI) determined that Justice had received shipments of at least two (2) other firearms-related items originating from Chinese vendors. These items include a "butt-stock" designed to turn a Glock pistol into a short-barreled rifle, along with a Glock compatible "auto-sear," which is a combination of parts designed to

11

covert a semi-automatic firearm into a fully automatic firearm, allowing it function as a machine gun. As indicated above, Defendant has received countless hours of taxpayer-funded training in methods and techniques of combat and weapons. He is assigned to the Weapons Systems Security Squadron, which is a unit of the KAFB Security Forces Group. These groups are responsible for base security as well as providing security for nuclear and non-nuclear materials and support operations. In the hands of someone with Defendant's combat and weapons training, the items described above present a very real danger to the community.

A search of Defendant's cell phone yielded dozens of disturbing images, as well as the complete manifesto of Brenton Tarrant, the man charged with (and who recently entered a guilty pela) 51 murders, 40 attempted murders, and engaging in a terrorist act in the Christchurch, New Zealand shootings at a mosque on March 15, 2019.  Copies of the materials from Defendants phone are attached as Exhibits A, B, and C.

    i.    **Exhibit A**

Exhibit A contains 43 different photographs (there are 44 files, the first one being a caption by the USAF OSI officer who collected the evidence).  Among them:

1. Page 2 is a photograph of a "butt stock" like the one discovered at Defendant's home, with the words "You can't shake the taste of blood."

2. Page 3 is a photograph of a person standing next to a truck full of weapons and ammo, next to a photograph of a machine gun and some apparent marijuana;

3. Page 4 shows an individual preparing to fire a rifle with a silencer, next to a photo of the license plate of an active duty Special Agent with KAFB Office of Special Investigations;

4. Page 5 shows the same license plate along with a coffee cup with an unknown substance;

5. Pages 6-9 are schematics for conversion of a firearm to full automatic mode;

6. Page 12, 13 shows silencer assemblies and a firearm part ready for full auto conversion;

7. Page 15 shows a picture of a person modifying a gun on top, and a diagram of an "L-shaped ambush formation," which is a military maneuver designed to prevent an enemy from escaping a "kill zone." Next to the gun modification are the words "What I appear to be doing." Next to the ambush diagram are the words "what I am actually doing." The implication seems to be that the author is preparing for an attack, whilst disguising his/her actions as routine. Next to both photos is a depiction of various "fringe" groups, with the words "hating police."

8. Page 17 depicts AR15 magazines with the names of active shooters painted on them. The New Zealand shooter, Brenton Tarrant, scrawled these same names on the magazines he used when he shot his victims in 2019, and he posted the pictures to Twitter.

9. Page 19 is more silencer photos with a firearm.

10. Page 20 is a diagram of a firearm for full auto conversion with a picture mocking the Uniform Code of Military Justice (UCMJ). The caption in the picture reads "We can't do that, it's against the UCMJ" with a response "Thats why no-one will remember your name." The inference is that strict adherence to the UCMJ shows a lack of guts or vision.

11. Page 23 is racist propaganda. One half of the picture mocks African Americans, and the other half takes aim at Muslims.

12. Multiple pages from 24-43 depict schematics for constructing Improvised Explosive Devices (IEDs), which are essentially homemade bombs, including

11

Molotov cocktails.

13. Page 25 also contains a picture making light of suicides within the military

14. Page 29 references the Christchurch shootings.

15. Page 44 contains a picture which reads "My family claiming how sweet I am" next to the words "Me knowing I'm on a few watchlists and will be labeled a domestic terrorist soon."

**ii.      Exhibit B**

Exhibit B is instructions for making a homemade silencer.

**iii.      Exhibit C**

Exhibit C is the Manifesto of the New Zealand shooter, Brenton Tarrant. The disturbing nature of these materials cannot be overstated. These files were not searches, viewed out of curiosity. Rather the files were saved to Defendant's phone, and, as introduced at the detention hearing, downloaded from an Instagram group Defendant follows. SA Sorenson testified he had researched the group and found that they espouse racist, alt-right beliefs and anti-government sentiment. SA Sorenson and ATF Special Agent Nate Kempton both testified that they are trained to recognize and disrupt active or mass shooters. Each testified that they believe Defendant was planning a mass shooting.

Collectively, the serious nature and circumstances of the charges and the strength of the evidence would almost certainly cause Defendant to flee unless he is detained pending trial. Indeed, the proximity of New Mexico to the southern border of the United States greatly enhances Defendant's flight risk. *Munoz-Hernandez*, 2012 U.S. Dist. LEXIS 161970, at *31-32 ("[t]he fact that New Mexico runs along the Mexican border increases the risk of flight to Mexico" and "decreases the ability of law enforcement officers to timely respond to a defendant's flight, even if the Court were to require [Defendant] to wear a GPS device during his release."). At the detention hearing, OSI SA Sorenson testified that agents also discovered on

Defendant's phone a "bug out" list and a makeshift last will and testament.  Sorenson testified that the "bug out" list contained a list of supplies and instructions, including firearms, ammunition, and body armor, that would enable Defendant (and his wife and son, also on the list) to take evasive action and avoid contact with civilization if needed.  Sorenson testified that this list appears to be a plan for Defendant to escape capture.  Defendant has the training, means, and plans to escape and survive for a long time outside the boundaries of everyday society and hide form authorities That he also had a makeshift last will and testament is troubling, as it indicates Defendant considered he might not survive whatever he was planning and preparing for.

### C.    Defendant's Criminal History

Defendant has no known criminal history, however he was officially reprimanded by the United States Air Force for attempting to steal gun supplies and ammunition in 2016. Although this is not a particularly serious charge, it demonstrates Defendant's willingness to ignore the law, even for petty matters.[1]

### D.    Danger to the Community

There is clear and convincing evidence that Defendant poses an extreme danger to the community. His training and experience, the fact that he illegally tried to import a silencer and parts to convert a gun to a machine gun, the 17 unregistered firearms and 3,000 rounds of ammunition found at his residence,[2] and the disturbing content on his phone are indicative of a man with a plan, who appears to be stockpiling weapons and ammunition.  The photos and documents on his phone reveal his anti-government and police leanings, to say nothing of the additional bigoted materials, which by themselves cause serious concerns.

---

[1] See Exhibit E, a letter of counseling sent to Defendant after he failed to wear his beret after being told to do so on a previous occasion. His lengthy diatribe in response reveals a barely-concealed rage that mirrors some of the anti-authority sentiments contained in the files saved on his phone.

[2] See Exhibit F, photos from execution of search of Defendant's residence.

The Department of the Air Force reviewed this matter for the possibility of confining Defendant on February 26. The Memorandum of this review is attached as Exhibit D. The Pretrial Confinement Officer is not a judge or an attorney. He found statements from friends and family members to be persuasive in releasing Defendant. As opposed to his friends and family members, several of Defendant's coworkers expressed grave concern:

1. A former flight chief who supervised Defendant recommended "staff arming" around Defendant, which means people who were not typically armed while in Defendant's presence, were now advised be armed when in Defendant's presence. The same flight chief also stated he believed Defendant would retaliate (against the flight chief).

2. Another coworker told investigators he saw a .50 caliber rifle in Defendant's vehicle and that Defendant admitted it was his. The coworker provided a signed statement to that effect. Defendant later told investigators he never had a .50 caliber rifle, but instead merely had empty casings he intended to fashion into jewelry.

3. Defendant is known to keep a notebook listing favorable and unfavorable actions of coworkers.  At least one coworker felt the notebook presented a potential threat to his safety, i.e., that Defendant might retaliate against those he believed had done him wrong.

4. The same coworker initially told investigators he did not feel Defendant was a danger, but changed his mind when he learned Defendant had purchased silencers.

5. Lt. Col. Chamberlin, Commander of Defendant's Squadron, believes there is a greater than 50% chance Defendant is a flight risk, given the nature of the offense, and also that there is a greater than 50% chance Defendant will commit other serious crimes.

6. The First Sergeant of Defendant's Squadron believes there is a greater than 50% chance Defendant will commit serious criminal misconduct if released, and is concerned Defendant will harm others.

11

There are also statements, as indicated, from friends and family of Defendant, which are supportive and contain statements discouraging any conclusion that he is dangerous. However, the photos and documents on Defendant's phone, with the diagrams for making explosives, anti-government and anti-police statements, racist propaganda, etc., were not known to any of the individuals who provided statements for the Pretrial Confinement Review, including his friends and family, who made positive statements, and also the individuals who made the statements above.  Furthermore, this Court should give greater weight to the statements of Defendant's commanding officers, who believe he presents a greater than 50% risk of harm to the community, and one of whom believes there is a greater than 50% likelihood he will attempt to escape prosecution.

Finally, ATF SA Nate Kempton testified at the March 19 detention hearing that during the pendency of the Air Force investigation of the silencers violations, Defendant left Kirtland Air Force Base, and went to Cutter Aviation.  Exhibit G is an APD police report which states that Defendant went to Cutter Aviation in full uniform and asked airport personnel about COVID-19 patients on arriving flights.  When the receptionist replied that they didn't have any patients, Defendant persisted, and told her he was under "military orders" to pick up coronavirus patients. When she told Defendant she had to check with her manager, he quickly left.  The witness found the encounter "suspicious and peculiar," due to Defendant's demeanor, and because such a transfer as Defendant demanded would not happen without advance planning and coordination. It is difficult to imagine any innocent, non-harmful purpose for Defendant to attempt to take custody of coronavirus patients.

A halfway house or any kind of third-party release are entirely unsuitable for Defendant. Defendant has shown a desire to inflict violent harm on others. He has been trained in many techniques he could use to escape the halfway house and injure others to do so if needed.  The halfway house also generally permits residents to possess wireless phones (including those with

11

internet access) and it would be easy for Defendant to gain access to a cell phone at the halfway house if he were determined to do so. Given the contents of his cell phone referenced here, this would present a very dangerous situation.

II.     CONCLUSION

The applicable factors discussed above should persuade this Court that Defendant must be detained pending trial. Clearly, there are "no . . . conditions [of release that] will" mitigate the risk of flight and extraordinary dangerousness posed by Defendant and "reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Under these circumstances, this Court should remand Defendant to the custody of the U.S. Marshals pending trial on the indictment.  Although this Court's review is *de novo*, it may still issue a ruling without a hearing.  All of the issues raised in Defendant's Motion were in fact raised in the prior hearing and pleadings.  There is no indication a hearing will produce new information or arguments not already part of the record in this case.

WHEREFORE, the United States requests that this Court deny Defendant's Motion Appealing Magistrate's Detention Order without a hearing.

Respectfully Submitted,

JOHN C. ANDERSON
United States Attorney


_/s/_____
JON K. STANFORD
Assistant United States Attorney


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Thursday, May 14, 2020, I filed the foregoing pleading electronically through the CM/ECF system, and thereby served counsel of record by electronic means.