

**DEPARTMENT OF THE AIR FORCE**
**377TH AIR BASE WING (AFGSC)**

26 February 2020

MEMORANDUM FOR  377 ABW/CC

FROM:  Pretrial Confinement Review Officer (COLONEL DAVID A. CARLSON)

SUBJECT:  Pretrial Confinement Review - SrA Charles B. Justice, 377 Weapons System Security Squadron (WSSS)

1. **PRELIMINARY MATTERS.** Pursuant to AFI 51-201, *Administration of Military Justice*, Chapter 3, Sections A and B, and Rule for Courts-Martial 305, I was appointed a pretrial confinement review officer with authority to review pretrial confinement orders on 1 July 2019 by Colonel David S. Miller, 377 ABW/CC (see attachment 1).  The case of the above-named confinee was referred to me by Colonel David Miller on 19 February 2020.  At the beginning of the hearing, I advised SrA Justice of his Article 31 rights, rights to counsel, and rights to make a statement and present evidence at the hearing.  Capt Michael Bruzik, 377 ABW/JA, and Capt Jeremy Driggs, 377 ABW/JA, served as government representatives for this hearing.  Capt Steven McKevett, 377 ABW/JA, served as a legal advisor.  There is no named victim in this matter, and, thus, no requirements pursuant to RCM 305(i)(2)(A)(iv) are triggered.

2. **OFFENSES ALLEGED.** SrA Justice is alleged to have committed the following offenses:

    a. Between on or about 1 April 2019 and on or about 19 February 2020, SrA Charles Justice failed to obey an order or regulation by failing properly register multiple firearms possessed on Kirtland AFB with Kirtland AFB authorities in violation of AFI 31-101.

    b. Between on or about 1 April 2019 and on or about 19 February 2020, SrA Charles Justice violated several federal firearm statutes, as incorporated pursuant to Article 134, Clause 3, Uniform Code of Military Justice (UCMJ).  Specifically, SrA Justice smuggled goods into the United States in violation of 18 USC § 545; possessed an unregistered National Firearms Act (NFA) item in violation of 26 USC § 5861(d); possessed an unserialized NFA item in violation of 26 USC § 5861(i); and unlawfully imported a firearm in violation of 18 USC § 922(l).

3. **ENTRY INTO CONFINEMENT.** The confinee was placed into pretrial confinement at the 27th Special Operations Security Forces Squadron Confinement Facility, Cannon AFB, NM, on 19 February 2020, pursuant to the order of Lt Col Shawn M. Chamberlin, 377 WSSS/CC (see attachment 2).

4. **DEFENSE PARTICIPATION.** SrA Justice and his counsel, Capt Robert Saulter, were present during the hearing. The confinee and counsel presented evidence and called several witnesses at the hearing, as outlined below.

Defendant's Exhibit A

5. **EVIDENCE.** Prior to this hearing, I reviewed the 72-hour memorandum (attachment 3) prepared by Lt Col Shawn Chamberlin, 377 WSSS/CC, including all of the attachments to the memorandum, and the 48-hour Probable Cause Determination by Colonel Theodore A. Breuker, 377 SFG/CC (attachment 4). The evidence presented during the hearing included the following:

    a. **Testimony of Special Agent Nathaniel Sorenson, AFOSI Detachment 814.** SA Sorenson relayed the following information:

        i. SA Sorenson is assigned to AFOSI Detachment 814. He has been an agent since 18 November 2019 and has been involved in approximately 40 investigations. He was one of many OSI agents assigned to investigate the allegations against SrA Justice, and was one of approximately 10 agents to conduct the search of SrA Justice's vehicle and residence.

        ii. Department of Homeland Security investigators contacted AFOSI Det 814 after identifying a suspicious package at JFK Airport in New York. The package was shipped from China and was intended for SrA Justice. This package contained a firearm suppressor. SrA Justice purchased this firearm suppressor from wish.com – an e-commerce website. The company is based out of San Francisco, CA, but ships many of its items from China.

        iii. AFOSI obtained search authorization from Colonel David Miller, 377 ABW/CC, to search SrA Justice's on-base residence and vehicle. The search affidavit is contained in the 72-Hour Memorandum (attachment 3). AFOSI recovered 17 firearms, none of which were registered with the SFS armory; three firearm suppressors (i.e. silencers); and approximately 3,000 rounds of ammunition. The Bureau of Alcohol, Tobacco, Firearms and Explosives also confirmed none of the items required to be registered under the National Firearms Act were in fact registered.

        iv. Two loaded 9mm handguns were found near the front door on a shelf that was within reaching distance of a child. SrA Justice has a 10-month old child; however, SA Sorenson was unware if the child could stand or crawl. The photos contained in attachment 7 were specifically placed next to the children's toys to show their proximity. SA Sorenson stated the weapons were approximately two feet away on a shelf. The AFOSI agents also found an AR-15 firearm in the master bedroom propped up against the second story window. This window overlooked an avenue of approach and a nearby elementary school. The agents also uncovered a silencer in the pantry in the kitchen and on a workbench in the carport. During a search of SrA Justice's vehicle, the agents found a loaded rifle, which was affixed with a firearm suppressor, in the backseat next to a child's carseat. The government representative introduced a few of the recovered firearms as exhibits.

        v. No .50 caliber rifle was found during the search of the residence or vehicle; however, the agents recovered spent .50 caliber shell casings during their search. SA Sorenson stated there is no reason to believe additional firearms remain in the residence given the scope of the search and number of agents involved.

        vi. SA Sorenson also relayed statements made by the SrA Justice during an interview with AFOSI agents following his arrest. SrA Justice told agents he ordered three muzzle breaks

through wish.com and modified items with a drill to install them on firearms. During the interview, SrA Justice jotted notes on the back of his notification card, which was left in the interrogation room. These notes identified SA Sorenson as the lead investigator and an arrow was pointed towards SA Sorenson's name. SA Sorenson interpreted this arrow as an indicator the SrA Justice may retaliate against him. The notification card also contained the statement, ".50 cal?"

vii. SA Sorenson also relayed information obtained from an interview with MSgt Christopher Pfeiffer, a former flight chief of SrA Justice. MSgt Phifer told SA Sorenson he would recommend "staff arming" around the SrA Justice, which is where those that typically are not required to arm should be armed. MSgt Phifer also told SA Sorenson that he believed, based on his gut feeling, the SrA Justice would retaliate. However, SrA Justice has never physically or verbally threatened MSgt Pfeiffer.

viii. AFOSI also discovered a number of books during their search that raised concerns, such as "Our Enemies in Blue" and the "Rise of the Warrior Cop."

ix. There is no indication SrA Justice has ever attacked anyone or been involved in a violent offense, which was confirmed with a law enforcement check. The only previous misconduct uncovered by AFOSI was an NJP from 2016 relating to the theft of firearm ammunition from a store.

x. There is no indication after interviewing SrA Justice's co-workers, friends, and family that he is a flight risk.

b. **Testimony of TSgt Bryan Miller, 377 WSSS.** TSgt Miller relayed the following information:

i. He currently works as a response force member with the 377 WSSS and has worked in security forces for the entirety of his 13.5 year military career. TSgt Miller supervised SrA Justice for one year (2018) and stated SrA Justice was very professional and one of the best airmen he has ever supervised.

ii. TSgt Miller recounted a discussion he had with the SrA Justice regarding a .50 caliber rifle. TSgt Miller saw the rifle in the backseat of SrA Justice's vehicle and stated, "I like your rifle." SrA Justice replied, "yeah, that's my .50 cal." TSgt Miller understood this reply to mean the firearm belong to SrA Justice. TSgt Miller testified the firearm was a big caliber rifle with a long barrel. He could not recount other details about this discussion (e.g. the weather, what he was wearing, etc.).

iii. He heard rumors circulating the unit that the SrA Justice kept a notebook of other unit members' actions – both favorable and unfavorable. TSgt Miller was worried about his safety due to this notebook and the nature of the offenses. TSgt Miller has never seen the notebook and was unaware of any written threat.

3

      iv. During a conversation with defense counsel on 24 February (day prior to hearing), TSgt Miller stated he did not believe SrA Justice was a dangerous person and was not aware of any specific threat. TSgt Miller's opinion changed, however, upon learning that the SrA Justice was purchasing firearm suppressors since these are mechanisms not used for personal defense, hunting, range practice, etc. TSgt Miller added that illegally modifying firearms was concerning to him.

    c. **Testimony of SSgt Stephen Gardner, 377 WSSS.** SSgt Gardner relayed the following information:

      i. He works as a flight sergeant at the 377 WSSS. SSgt Gardner has known SrA Justice for roughly four years and has maintained a close personal and professional behavior. SrA Justice was the photographer for SSgt Gardner's wedding and baby shower. In a professional capacity, SSgt Gardner described SrA Justice as one of the hardest working people he has ever met.

      ii. SrA Gardner has never heard SrA Justice threaten anyone or act in a violent fashion, and SrA Justice would never do anything to threaten the safety or well-being of his family.

      iii. SSgt Gardner has no concern SrA Justice will either flee or commit serious misconduct if released from pretrial confinement. SSgt Gardner was not aware of the nature of the offenses when he first testified; however, a government representative questioned him on whether the offenses and surrounding circumstances (e.g. AFOSI recovered 17 unregistered firearms, nearly 3,000 rounds of ammunition, firearm suppressors, firearms recovered near child's toys, etc.) changed his opinion. SSgt Gardner stated these facts did not change his opinion.

    d. **Testimony of TSgt Jesse Anderson, 377 WSSS.** TSgt Anderson relayed the following information:

      i. He has known SrA Justice for four years and used to serve as his supervisor at the 377 WSSS. SrA Justice stood out from his peers and was always respectful of others. He further explained that SrA Justice has an excellent military bearing. TSgt Anderson also testified that SrA Justice is an incredibly supportive friend, and he reached out to SrA Justice for support when he was experiencing personal problems. The two have maintained a personal relationship since meeting four years ago.

      ii. TSgt Anderson has never seen SrA Justice act violently and has no reason to believe he is either a flight risk or would commit serious criminal misconduct if released from confinement. TSgt Anderson added he would not vouch for every airman and would feel personally responsible if SrA Justice was released from confinement and something occurred.

      iii. TSgt Anderson was not aware of the nature of the offenses when he first testified; however, a government representative questioned him on whether the offenses and surrounding circumstances (e.g. AFOSI recovered 17 unregistered firearms, nearly 3,000 rounds of ammunition, firearm suppressors, firearms recovered near child's toys, etc.) changed his opinion. TSgt Anderson stated these facts did not change his opinion. TSgt Anderson was aware of the NJP, but noted SrA Justice has been an exemplary airman since that mistake.

e. **Testimony of Mrs. Rebecca Auringer, 377 ABW/IG.** Mrs. Auringer relayed the following information:

  i. She works as the Director of Complaints at the 377 ABW/IG office. Mrs. Auringer knows SrA Justice via the Kirtland Air Force Base Tax Center. Both Mrs. Auringer and the SrA Justice volunteered at the center in 2019.

  ii. Mrs. Auringer's testimony centered on her professional relationship with the SrA Justice at the tax center. Mrs. Auringer would interact with SrA Justice a couple of days a week and described him as very reliable and personable with clients. She also relayed that others working at the tax center had good things to say about SrA Justice.

  iii. When questioned as to SrA Justice's likelihood of fleeing or committing serious criminal misconduct, Mrs. Auringer stated she has no knowledge whether he was a flight risk, but that he seemed happily married and excited to be a father. She had no concerns regarding her own safety, but, again, noted her limited experience with the SrA Justice.

  iv. Mrs. Auringer has never discussed firearms with the SrA Justice and has no idea how SrA Justice handles firearms. She was also unaware the SrA Justice received a NJP for theft, but added that prior misconduct is not necessarily determinative of a person's character.

f. **Testimony of Lt Col Shawn Chamberlin, 377 WSSS/CC.** Lt Col Chamberlin relayed the following information:

  i. He is the commander of the 377 Weapons System Security Squadron and ordered SrA Justice into pretrial confinement as his squadron commander. Lt Col Chamberlin's justifications are contained in the 72-Hour Memorandum (attachment 3). Lt Col Chamberlin received an email from the SrA Justice's spouse (attachment 12), via Capt Saulter, stating that she missed her spouse and did not feel threatened by him.

  ii. Lt Col Chamberlin believes there is a greater than 50% chance SrA Justice is a flight risk given the nature of the offenses; however, he added that he did not have the opportunity to speak with the SrA Justice and cannot read his mind. He would like, however, SrA Justice to undergo a mental health evaluation regardless of the results of this hearing.

  iii. Lt Col Chamberlin also stated he believes there is a greater than 50% chance SrA Justice will commit other serious crimes, but without a command-directed evaluation (CDE) it is difficult to say for certain. He stated this calculation was based on (1) the nature and circumstances of the charges, specifically that SrA Justice had purchased several firearm suppressors and failed to properly register any of his firearms, (2) various firearms appeared to be placed strategically throughout SrA Justice's home, (3) the possibility of the SrA Justice's child accessing the firearms (i.e. a few firearms were found in close proximity to where the SrA Justice's child may have been playing), and (4) he personally observed a .22 caliber firearm and spent shell casings in the backseat of the SrA Justice's car next to a baby carseat while the vehicle was parked at work. Lt Col Chamberlin also added he was unaware if SrA Justice ever

brought an unauthorized firearm into the workplace, and is unaware of any specific verbal or physical threats SrA Justice has directed towards others.

    iv. Both defense counsel and the government representative questioned Lt Col Chamberlin on his experience and ability to identify risks and mitigate said risks.

  g. **Testimony of SMSgt Michael Rumora, 377 WSSS/CCF.** SMSgt Rumora relayed the following information:

    i. He currently serves as the First Sergeant for the 377 WSSS and is familiar with the facts of the AFOSI investigation. Based on the facts relayed to him and the 377 WSSS command team, SMSgt Rumora does not believe there is a greater than 50% chance that SrA Justice is a flight risk.

    ii. SMSgt Rumora believes, however, that there is a greater than 50% chance that the SrA Justice will commit serious criminal misconduct if he is released from pretrial confinement. SMSgt Rumora based this determination on the totality of the facts known to him at the time of hearing, including the fact the SrA Justice illegally purchased firearms and firearm suppressors and could still have access to firearms via the internet.

    iii. SMSgt Rumora stated he had concerns SrA Justice would harm others, but he was unaware of any specific threats made by the SrA Justice. SMSgt Rumora was also aware that the SrA Justice's spouse was not concerned for her safety, but would not be surprised if other people were concerned.

  h. **Sworn Statement of SrA Justice.** SrA Justice was sworn in and read a written statement. SrA Justice stated he has never threatened others and has no intention to harm others or ill will towards anyone who participated in the hearing today. He added that all of his firearms were seized during the search, and, if additional firearms are discovered, he will gladly hand them over to authorities. He also stated he has never owned a .50 caliber rifle and does not have the resources to purchase such a firearm. Regarding the .50 caliber shell casings in his vehicle, he stated he collected them at the gun range and was intending on making jewelry and other items out of the casings.

  i. **SrA Justice UIF File.** The UIF contains the full record of SrA Justice's non-judicial punishment for attempting to steal gun supplies and ammunition and a Letter of Counseling for failing to wear his beret.

  j. **Authority to Search and Seize.** The AF 1176 and accompanying affidavit described the places to be searched and seized and the circumstances surrounding the request, which includes the pertinent facts (i.e. the interception of a firearm suppressor at JFK airport, failure to register firearms with the SFS armory, etc.) and general background on arms trafficking. Please note the affidavit as it was submitted appears to be out of order.

  k. **Photographs of Seized Items.** Photographs captured of the seized items, including several firearms and firearm suppressors.

l. **Statement of TSgt Bryan Miller.** TSgt Miller completed a signed, sworn statement, which is captured on an AF IMT 1168, recapping his encounter with SrA Justice when SrA Justice had a .50 caliber rifle in his vehicle (see para. 5(b) above for the testimony of TSgt Miller on this topic).

m. **Statement of SrA Zachary Swank.** SrA Swank completed a signed, sworn statement, which is captured on an AF IMT 1168, recapping a date when he and SrA Justice visited a shooting range and SrA Justice used a .22 caliber rifle with a suppressor affixed.

n. **Rights Advisement Card.** During an interview with AFOSI, SrA Justice scribbled several notes on the back of his rights advisement card, which was left in the interrogation room. The card contains the lead agent's name, notes about various firearms, and the words ".50 cal?"

o. **Photographs of Seized Items and SrA Justice's Residence.** Additional photographs of items seized during the search of SrA Justice's residence and the location of some of the firearms, including a firearm propped against a window in the master bedroom (see para. 5(a) for SA Sorenson's testimony regarding these items).

p. **Statement of Mrs. Beatrice Ottomanelli.** Mrs. Ottomanelli stated she is not afraid or fearful of her spouse, SrA Charles Justice, in any way and she has no reason to believe SrA Justice would harm herself or her child. In the ten years she has known SrA Justice, she has never feared for her safety. Mrs. Ottomanelli also discussed how her husband is incredibly supportive and an excellent father. Finally, Mrs. Ottomanelli provided some background information on wish.com – the e-commerce site SrA Justice used to purchase the firearm suppressor. Mrs. Ottomanelli's statement contains four attachments, including an email she sent to Capt Saulter who, in turn, forwarded to Lt Col Chamberlin. In this email, Mrs. Ottomanelli stated no firearms remain in their residence and SrA Justice's passport has been removed. Please note the statement references an attachment titled, "Lakes Jersey (Lebron James)." This attachment was discussed at the hearing but was not submitted to the PCRO.

q. **Statement of Mrs. Jennifer Ottomanelli.** Mrs. Jennifer Ottomanelli is SrA Justice's mother-in-law. In her statement, she notes that SrA Justice is a wonderful son-in-law and a polite, thought, and kind husband. She concluded by stating, "I am confident that he would never hurt anyone or flee from his circumstances. I am 100% certain that he is not a danger to his family or himself."

r. **Statement of SrA Karleigh E. Marin.** SrA Marin has known SrA Justice since 2014 and describes him as one of the smartest defenders he has ever accounted. She also stated, "Justice is the absolute best person I have ever met in my life" and highlighted his supportive personality.

s. **Statement of SrA Zachary Swank.** In his statement, SrA Swank noted he has known SrA Charles since April 2017 and highlighted their close personal relationship. SrA Swank also stated that SrA Justice is cautious around firearms: "He always ensured firearm safety was being followed."

 t. **Statement of Mr. Luke Swancutt.** Mr. Swancutt is a former SFS member and has known SrA Justice for five years. Mr. Swancutt recounted his experience shooting recreationally with SrA Justice and stated SrA Justice knows how to properly handle firearms and always ensured everybody's safety. In the five years he has known SrA Justice, he has never witnessed any inclination for violence beyond the minimum requirements of his job as security.

 u. **Email from Capt Saulter to Lt Col Chamberlin.** An email from SrA Justice's defense counsel citing the statements of SrA Marin, SrA Swank, and Mr. Swancutt.

 v. **Email from Capt Saulter to Colonel Carlson.** Email from defense counsel stating the exhibits they intend to offer and witnesses they will call at the pretrial confinement hearing.

 w. **Defense Demand for Speedy Trial.** Defense counsel submitted a request for a speedy trial on 24 February 2020.

6. **FINDINGS:** After considering the evidence (summarized above) and the attached documents, I do find by a preponderance of the evidence that the confinee committed the offenses for which he is held. However, I do not find continued pretrial confinement is required under the criteria set forth under Rule for Courts-Martial 305(h)(2)(B) for the following reasons:

 a. There is sufficient evidence that offenses triable by a court-martial were committed and that SrA Justice committed those offenses. SA Sorenson and Lt Col Chamberlin's testimony, in addition to the evidence contained in attachments 6, 7, and 11, demonstrate by a preponderance of the evidence that SrA Justice failed to register 17 firearms with the SFS armory, as was his duty, and illegally purchased and imported NFA regulated devices without the proper permits. Specifically, a firearm suppressor was recovered by Homeland Security investigators at JFK airport. ATF, in turn, confirmed this suppressor was not properly registered.

 b. There is no indication SrA Justice is a flight risk. SrA Justice's wife and young child live on Kirtland Air Force Base which makes him less likely to flee the area (i.e. SrA Justice has ties to the locale). Additionally, according to the written statement of the Mrs. Ottomanelli, SrA Justice's wife, his passport was seized – and no contradictory evidence or testimony was admitted stating otherwise (attachment 12). There is also no indication that SrA Justice has a history of failing to appear for other appointments. Although Lt Col Chamberlin, SrA Justice's squadron commander, believes it is more likely that not that the SrA Justice is a flight risk, there was no evidence introduced that SrA Justice has a history of flight and no specific concerns were raised beyond the general nature of the allegations (see para. 5(f)). Furthermore, SrA Justice's First Sergeant, SMSgt Michael Rumora, testified he did not believe SrA Justice was a flight risk (see para 5(g)). Finally, several individuals with a close relationship to the SrA Justice – his spouse, Mrs. Jennifer Ottomanelli, SSgt Gardner, and TSgt Anderson – reiterated they did not believe SrA Justice was a flight risk. For example, his mother-in-law, Mrs. Jennifer Ottomanelli stated, "I am confident that he would never hurt anyone or flee from his circumstances. I am 100% certain that he is not a danger to his family or himself" (attachment 13). In short, there was no specific, articulable evidence presented indicating SrA Justice was a flight risk beyond the general nature of the allegations.

    c. By a preponderance of the evidence, I find that SrA Charles Justice is not likely to commit serious criminal misconduct if released from pretrial confinement. SrA Justice's closest friends, colleagues, and family members were unanimous that SrA Justice has never verbally or physically threatened others. SSgt Gardner and TSgt Anderson, who have both known him for four years, both stated that SrA Justice is a calm, level-headed person and they have no reason to believe he would harm others (see para. 5(c) and 5(d)). Although SrA Justice's squadron commander and first sergeant both stated they believed it was more likely than not SrA Justice would commit further serious misconduct if released from confinement, they were unaware of any specific threats to others or the safety of the community (see para. 5(f) and 5(g)). Lt Col Chamberlin, SrA Justice's squadron commander, believed he posed a threat to others due to the location of the firearms throughout his residence, the failure to register firearms with the SFS armory, and the purchase of firearm suppressors (para. 5(f)). I believe these actions are reckless, but they do not indicate SrA Justice will commit serious criminal misconduct if released. Lt Col Chamberlin added that it is difficult to ascertain SrA Justice's motives without a proper mental health examination. As noted below, I am recommending Lt Col Chamberlin order a CDE to determine SrA Justice's mental state; however, beyond the nature of the offenses there is no indication SrA Justice has a mental condition that would render him a threat to himself or others. I also considered SrA Justice's previous misconduct, specifically the non-judicial punishment he received in 2016 for attempting to steal gun supplies. Since then, he has had no misconduct beyond a minor infraction for not wearing his beret (attachment 5). That is, there is no indication the alleged offenses are part of a long-string of serious criminal misconduct. Taken together, I do not believe there is a preponderance of the evidence that SrA Justice will commit serious criminal misconduct if released from confinement.

    d. Neither defense counsel nor the government representatives specifically presented evidence regarding lesser forms of restraint until their respective closing arguments. Capt Michael Bruzik, government representative, argued in his closing summation that if I did not conclude SrA Justice was a flight risk or likely to engage in serious criminal misconduct I should nevertheless impose some form of restriction. Although the alleged offenses involve unregistered firearms and firearm suppressors, I believe lesser forms of restraint can satisfy any concerns regarding the safety of the community – given that his firearms were seized by AFOSI and SA Sorenson stated in his testimony it is unlikely there are other firearms in his residence given the scope of AFOSI's search.

7. **DECISION**. In accordance with the above findings, SrA Charles Justice will be released from pretrial confinement.

8. **RECOMMENDATION**. I recommend SrA Justice's squadron commander order a mental health evaluation to determine whether he poses any threat to himself, his family, or his community and to restrict the SrA Justice to the confines of Kirtland Air Force Base pending the results of the mental health evaluation.

DAVID A. CARLSON, Colonel, USAF
377 MXG/CC
Pretrial Confinement Review Officer

19 Attachments:
1. Letter of Appointment, 1 Jul 19, 1 pg
2. Confinement Order, 19 Feb 20, 1 pg
3. 72-Hour Memorandum, 21 Feb 20, 23 pgs
4. 48-Hour Probable Cause Determination, dated 21 Feb 20, 1 pg
5. SrA Justice UIF file, 3 June 17, 11 pgs
6. Authority to Search and Seize, 18 Feb 20, 15 pgs
7. Photographs of Seized Items, undated, 14 pages
8. Statement of TSgt Bryan Miller, 20 Feb 20, 3 pgs
9. Statement of SrA Zachary Swank, 20 Feb 20, 2 pgs
10. Rights Advisement Card, undated, 2 pgs
11. Photographs of Seized Items and SrA Justice's Residence, undated, 15 pgs
12. Statement of Mrs. Beatrice Ottomanelli, 24 Feb 20, 10 pgs
13. Statement of Mrs. Jennifer A. Ottomanelli, 24 Feb 20, 1 pg
14. Statement of SrA Karleigh E. Marin, 23 Feb 20, 2 pgs
15. Statement of SrA Zachary Swank, 21 Feb 20, 2 pgs
16. Statement of Mr. Luke Swancutt, 23 Feb 20, 2 pgs
17. Email from Capt Saulter to Lt Col Chamberlin, dated 24 Feb 20, 1 pg
18. Email from Capt Saulter to Colonel Carlson, dated 24 Feb 20, 1 pg
19. Defense Demand for Speedy Trial, 24 Feb 20, 1 pg

cc:
Capt Robert Saulter, Area Defense Counsel, 377 ABW/ADC
Capt Michael Bruzik, Government Repetitive, 377 ABW/JA
Capt Jeremy Driggs, Government Representative, 377 ABW/JA
Capt Renard Hamlette, Cannon AFB Confinement, 27 SOSFS/DFO
TSgt Ryan Heath, NCOIC Confinement Kirtland AFB, 377 SFS/S3J