IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>        vs. )<br>)<br>CHARLES BRENT JUSTICE, )<br>)<br>    Defendant. ) | Case No. 20-CR-1210 JAP |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

    The United States of America responds in opposition to Defendant Charles Brent Justice's Motion to Suppress. Defendant's motion incorrectly asserts that "law enforcement breached [Defendant's] Fourth Amendment right against unreasonable search and seizure." As the evidence will show, agents proceeded under an orally amended, valid grant of authority to search Mr. Justice's home and truck.

## FACTS

    1.    On February 7, 2020, the Air Force Office of Special Investigations (AFOSI) received a call from Special Agent Zachary Souder of Homeland Security Investigations (HSI). Souder explained that HSI had learned that a person living on base had attempted to illegally import a silencer, contrary to the National Firearms Act (NFA) and other federal law. That person was identified as Defendant, Charles Brent Justice. Defendant's address on base and status as an airman was confirmed through records checks.

    2.    Souder advised that the silencer had been intercepted at the John F. Kennedy mail center in Jamaica, NY. U.S. Customs and Border Protection (CBP) agents examined the parcel

1

containing the silencer, and verified that it contained a silencer.  CBP agents shipped the package to HSI agents in Albuquerque for further inspection.

3. In the meantime, Souder contacted Special Agent Nathan Kempton of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and asked him to conduct a Federal Licensing System (FLS) check to verify whether Defendant had ever applied for or received the required ATF permit and tax stamp allowing Defendant to import and or possess a silencer, under the NFA.  Kempton confirmed Defendant had never applied for and thus never received the required permission to import or possess a silencer.  Defendant had likewise never applied for a Federal Firearms License, and was therefore not authorized to import, manufacture or sell a silencer, and he cannot receive any NFA- controlled items at his residence.

4. That same date, AFOSI SA William McCoy investigated whether Defendant had ever applied for or received permission to register and store firearms at his residence, as required by Air Force Instruction 31-101, and documented on Air Force Form 1314.  Air Force authorities confirmed they had no record of Defendant applying for or receiving permission to register and/or store any firearms at his on-base residence.

5. On February 10, 2020, AFOSI SA Meskill met with HSI SA Souder, who advised that records show that over a 10 month period, Defendant had placed over 30 orders to companies located in China.  Approximately 15 of these orders were for suspected gun parts, including a "trigger fish," which is a part designed to convert a semiautomatic Glock pistol into a fully automatic weapon, and a butt stock receiver, which allows a Glock pistol to be shoulder fired similar to a short barreled rifle.  Each of these items are controlled under the NFA, and require permits and tax stamps before they may be legally possessed in the United States.

6.      The parcel intercepted by HSI listed Defendant as the recipient, at his on-base residence.  The shipper was listed as Xiaohuji, with the contents labeled as "fuel filter."  The parcel was opened and examined by SA Meskill, who verified through ATF that the item it contained was in fact a silencer.

7.      On February 18, 2020, based upon the foregoing and other information, Base Commander Colonel David Miller found probable cause existed, and granted agents authority to search Defendant's truck and residence by issuing an AF1176 Authority to Search and Seize.  The search was to take place after the package was delivered to Defendant.

8.      Colonel Miller later determined that safety concerns weighed against the planned controlled delivery.  Colonel Miller found that probable cause existed to search Defendant's residence and truck, even without delivery of the silencer.

9.      When agents searched Defendant's residence and truck shortly thereafter, they recovered additional silencers, as well as 17 unregistered firearms, nearly 7,000 rounds of ammunition, and roughly 160 military headsets that appeared to be stolen.

## ARGUMENT

**I.      The Search of Defendant's Residence and Vehicle Were Valid Because Search Authority Was Expanded Orally By The Base Commander.**

Defendant alleges that the search in this case was invalid because the "condition precedent" to the execution of the warrant never occurred.  Defendant assails the "reasons not addressed or explained in the discovery" for not answering his question as to why the search proceeded without the condition precedent.  The government was unaware Defendant had any doubt or questions about the manner in which the search was undertaken until it read the Motion to Suppress, but will undertake to explain here.

3

### A. Colonel Miller Lawfully Expanded The Search Authorization.

Military Rule of Evidence 315 governs probable cause searches involving military members and military property. This authority includes military housing located on military bases. Under Military Rule of Evidence 315(b)(1), "[a]n 'authorization to search' is an express permission, **written or oral**, issued by a competent military authority to search a person or an area for specified property or evidence or for a specific person and to seize such property evidence or person." (emphasis added).

The Court of Military Appeals has held that "with respect to the performance of his duty in the finding of probable cause and of authorizing searches, this Court has held that the commanding officer stands in the same position as his civilian counterpart, the federal magistrate." (*United States v. Ezell*, 6 M.J. 307, 314-15, CMA 1979). The Rules for Courts Martial are slightly different from Federal Rules of Criminal Procedure, in that they allow for search authorizations to be provided in writing and/or orally. The Tenth Circuit has previously upheld oral search authorizations provided by military commanders. *See United States v. Brown*, 784 F.2d 1033, 1037 (10th Cir. 1986) ("This court has heretofore held that under military rules oral affidavits and oral authorization of search warrants without contemporaneous writings are free from any constitutional infirmity. *Wallis v. O'Kier*, 491 F.2d 1323, 1325 (10th Cir.), cert. denied, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974)."). "[T]hat as long as the military respects the rights guaranteed by the Fourth Amendment's prohibition against unreasonable searches and seizures, the military need not be bound by all of the procedural formalities that are imposed upon civilian law enforcement agencies." *Id.* (citing *United States v. Rogers*, 388 F.Supp. 298, 301 (E.D.Va.1975) (internal quotation marks removed).

At a hearing on this matter, the United States will show that Colonel Miller orally amended his original grant of search authority to remove the "condition precedent" – the controlled delivery of the silencer – having found that probable cause existed without the delivery.  AFOSI planned the controlled delivery in the hopes of arresting Defendant at his home upon the delivery.  They intended to execute the delivery with a United States Postal Service employee who had specialized training and experience conducting high-risk controlled deliveries.  When that individual became unable to participate on the planned date of delivery, AFOSI and Colonel Miller became concerned about what Defendant might do if suddenly cornered with the prospect of being arrested.  As a result, Colonel Miller found probable cause existed and granted search authority without the need to complete the controlled delivery.

### B. Although The Search Authorization And The Resulting Search Were Valid, The Good Faith Exception Would Otherwise Apply.

The exclusionary rule permits courts to exclude unlawfully obtained evidence.  See, e.g., *United States v. Hererra*, 444 F.3d 1238, 1248 (10th Cir. 2006).  But the exclusionary rule is "harsh" and should only be applied when necessary to further its intended purpose, which is to "deter police misconduct."  *Id*. at 1248-49.  Improperly obtained evidence is admissible when officers "act with an objectively 'reasonable good-faith belief' that their conduct is lawful or when their conduct involves only simple, 'isolated' negligence…" *Davis v. United States*, 564 U.S. 229, 238 (2011)(quoting *United States v. Leon*, 468 U.S. 897, 909 (1984) and *Herring v. United States*, 555 U.S. 135, 137 (2009).   When law enforcement officers act "in an objectively reasonable manner, on a mistake made by someone other than the officer," "there is no illegality and thus nothing to deter." *United States v. Loera*, 923 F.3d 907, 925 (10th Cir.), *cert denied,* 140 S.Ct. 417, 205 L. Ed. 2d 238 (2019)(citation omitted).

When law enforcement officers searched Defendant's home and truck, they acted on a valid grant of search authority, which Colonel Miller had orally expanded after finding probable cause even without the condition precedent. As a result, their actions were lawful, and the exclusionary rule does not apply. However, even if one were to speculate as to some vague default in the issuance of the search authority, the officers who searched Defendant's home and truck acted reasonably by relying on a statement from their base commander that they had authority to conduct the search. The good faith exception would therefore apply, and the evidence should not be excluded. *See United States v. Perkins*, 78 M.J. 381, 389 (C.A.A.F. 2019) (finding an agent's reliance on the commander's authorization was "good faith" under Mil. R. Evid. 311(c)(1)(C)).

## CONCLUSION

Colonel Miller lawfully expanded the search authority. Consequently, the search was valid and legal. Wherefore, for the foregoing reasons, the United States respectfully requests that the Court deny Defendant's Motion to Suppress.

>Respectfully submitted,
>
>JOHN C. ANDERSON
>United States Attorney
>
>*Electronically filed*
>
>Jon Stanford
>Nick Mote
>Assistant United States Attorneys
>PO Box 607
>Albuquerque, NM 87103
>(505) 346-7274

I HEREBY CERTIFY that I electronically filed the
foregoing with the Clerk of the Court
using the CM/ECF system which will send

notification to defense counsel of record.

   *Filed Electronically*
Jon Stanford
Assistant United States Attorney