IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.   No. 20-CR-01210-JAP

CHARLES BRENT JUSTICE,

        Defendant.

### DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO PSR AND MOTION FOR VARIANCE TO THE PRESENTENCE REPORT

Defendant Charles Brent Justice ("Mr. Justice"), by and through his counsel of record, Romero & Winder, PC (Joe M. Romero, Jr.), hereby respectfully submits this Reply to the United States' Response to Objections to PSR and Motion for Variance to the Presentence Report (Doc. 91, "Response").

### ARGUMENT

**I.   The Government Does Not Dispute Mr. Justice's Objections to Paragraphs 14, 46, 59-60, and 72 of the PSR.**

In its Response, the government does not address Mr. Justice's objections to the PSR. *See* Doc. 88 (objections to paragraph 14, 46, 59-60, and 72 of PSR, Doc. 86). As such, the government has waived any objection to Mr. Justice's objections. *Patmon v. Mumina*, No. 92-6150, 1992 U.S. App. LEXIS 26264, at *4 (10th Cir. Oct. 6, 1992) (the court ruled that the party conceded the issue when she failed to address it). Since Mr. Justice's objections are effectively undisputed, the PSR should be amended to find or conclude (1) that Mr. Justice did not illegally purchase or possess an auto sear, nor did he illegally possess the buttstock seized from his home (Doc. 86, ¶ 14); (2) Mr. Justice was mis-identified as the person involved in the encounter

described in paragraph 46 of the PSR (Doc. 86, ¶ 46); and (3) The characterization of Mr. Justice as having a "substance abuse history" or having a "heavy involvement in partying" is incorrect (Doc. 86, ¶ 59-60); and (4) Mr. Justice does not have any credit card debt (Doc. 86, ¶ 72).

## II. The Government's Objection to Imposing a Downward Variance Based on Speculation are Improper.

"[D]istrict courts may not make 'unfounded assumptions' when fashioning a sentence for a defendant." *United States v. Hughes*, 283 Fed. Appx. 345, 353-354 (2008 6th Cir.) (*quoting United States v. Romero*, 269 Fed. Appx. 689, 690, 2008 U.S. App. LEXIS 5804, *2 (9th Cir. March 11, 2008) (unpublished) (*citing Gall,* 128 S. Ct. at 597) (vacating a sentence in part because the district court speculated about a defendant's statistical likelihood of becoming a recidivist)).

### A. Attempting to Paint Mr. Justice in a Negative Light, the Government Enumerates Conduct by Mr. Justice Which is Lawful.

The government's opposition to the requested variance is, in significant part, based on speculation. The government's unfounded allegations and inuendo serve only to prejudice Mr. Justice by painting him in a negative light. The lawful conduct enumerated by the government (Doc. 91, at 4-5), regardless of the government's intimations, weighs in favor of granting Mr. Justice's Motion for Downward Variance. For example:

- Contrary to the government's assertions (Doc. 91, at 4), owning a buttstock – even one "designed to attach to a Glock pistol" -- is *not* illegal. The government has cited to *no law* nor has it presented *any* evidence of the illegality of owning a buttstock, nor was Mr. Justice been charged with owning an illegal buttstock.

- The government continues to allege that Mr. Justice purchased an auto-sear (Doc. 91, at 4) but presents *no evidence* that Mr. Justice ever purchased or possessed an auto-sear. *See* Doc. 48-1 search inventory; Doc. 91, at 4 (Search Inventory, does not list an auto-sear as an item seized during search).

- The government's continued reference to the "163 government headsets (*believed* to have been taken without permission)" (Doc. 91, at 5 (emphasis added)) is also unsupported by evidence, is impermissibly speculative, and only serves to prejudice the defendant.

- Mr. Justice *legally* owned 17 firearms and 6900 rounds of ammunition which the government seized from Mr. Justice's home during its February 19, 2021, search. The government concedes that "the types and quantity of firearms or ammunition at Defendant's residence do not have an impact on Defendant's total guideline calculation as they were *lawfully* possessed at the time of the instant offense." Doc. 91, at 5 (emphasis added).

- Ownership of ballistic armor is *legal*; Mr. Justice was never charged with the unlawful possession of ballistic armor. Doc. 91, at 5.

The sole factual basis for the crimes to which Mr. Justice has pled are based on his acknowledged purchase and possession of firearm silencer or suppressor. The remaining references to firearms related items or property which Mr. Justice lawfully owned, including firearms or firearms related property he has owned since childhood, is irrelevant and prejudicial to Mr. Justice's right to a fair sentence. *See United States v. Aragon*, 922 F.3d 1102, 1116, 2019 U.S. App. LEXIS 12761, *28 (J. Homes, concurring) (to the extent that the information provided to the court is relevant, it must lead the court to impose a fair sentence).

Like many Americans, Mr. Justice is admittedly a firearm enthusiast. He grew up in a household where firearms were safely used, possessed, serviced, and used for sporting purposes. A full "[t]hirty-two percent of U.S. adults say they personally own a gun, while a larger percentage, 44%, report living in a gun household. Adults living in gun households include those with a gun in their home or anywhere on their property." "[O]wning more than 40 guns is actually fairly common in the United States: there are an estimated 7.7 million super-owners." Lois Beckett, *The gun numbers,* The Guardian (Nov. 15, 2017), https://bit.ly/3x2Amif. "Super-gun owners" own an average of 17 firearms each. *Id.*

### B. The Alleged Concerns of Co-Workers Presented by the Government are Baseless, Speculative, and Prejudicial to Mr. Justice's Right to Fair Sentencing.

The government submits unsupported claims regarding Mr. Justice by co-workers which are impermissibly speculative. The court's evaluation and assessment of the Section 3553 factors is "flawed" when it "rests on speculation rather than evidence bearing 'sufficient indicia of reliability.'" *United States v. Bradley*, 628 F.3d 394, 401, 2010 U.S. App. LEXIS 25364, *19-20 (*citing United States v. Pulley*, 601 F.3d 660, 665).

In contrast with rank speculation, and except for the firearm silencer case before this Court, Mr. Justice's life has been one of *lawful* conduct, respect from his peers and colleagues, and *no* evidence of nefarious intentions. The government concedes it has no evidence of Mr. Justice's alleged mal-intent when they characterize his conduct only as "*possibly* nefarious." Doc. 91, at 6 (emphasis added). Mr. Justice committed the non-violent criminal offenses to which he has pled without subterfuge: he used his own name, his own debit card, and his actual Kirtland Airforce Base home address for delivery of the items he ordered from a legal ecommerce site on the internet. *Supra*, n.1. His purchase of an item, known as an inline fuel filter, which he planned to assemble and use as a firearm silencer. In doing so, he was not motivated out of any nefarious purpose or violent intent. Rather, he was motivated by an obsession to study the engineering dynamics of firearms and firearms related items as well as the challenge of assembling or building such items himself.

The alleged concerns by co-workers are utterly speculative and thus unreliable. Doc. 91, ¶¶ 1, 4. To wit:

- In its Response, the government references a "former flight chief" who "stated he *believed* Defendant would retaliate (against the flight chief for making the report)." Doc. 91, ¶ 1 (underline emphasis omitted, italics added). The government's own Exhibit A (Doc. 91-1), however, shows that this alleged concern was based only on the flight chief's "gut feeling" and that Mr. Justice actually "has never physically or verbally

threatened" the flight chief. Doc. 91-1, at 3. The government also provides nothing – no specific conduct or statement attributed to Mr. Justice -- on which the so-called "gut feeling" was based. In addition, the alleged proposed recommendation for staff to arm themselves around Mr. Justice *never occurred*, because there was never a need for such action. The "former flight chief's" statement was apparently made after Mr. Justice's arrest. It has a "piling on" quality to it given that it is based on an after the fact "gut feeling" as opposed to any actual evidence.

- The government asserts that Mr. Justice "was known to keep a notebook listing favorable and unfavorable actions of co-workers" (Doc. 91, ¶ 3) and "one co-worker *felt* the notebook presented a *potential* threat to his safety . . ." *Id.* (emphasis added). Presumably the government is citing to the statements of TSgt Miller. Doc. 91-1, at 3, ¶ 5.b.iii. The government's own exhibit indicates that TSgt Miller "heard rumors" about an alleged notebook, but that he had "never seen the notebook and was unaware of any written threat." *Id.* In addition, "TSgt Miller stated he did not believe SrA Justice was a dangerous person and was not aware of any specific threat." *Id.* at 4, ¶ 5.b.iv. Again, there is no actual evidence as the existence of such a notebook. This assertion is based on nothing more than rumor and speculation.

- The government asserts that an unnamed co-worker allegedly saw a .50 caliber rifle in Mr. Justice's truck. Doc. 91, ¶ 2. But according to the government's own exhibit, this unnamed person is also TSgt Miller. Doc. 91-1, at 3, ¶ 5.b.ii. The government *never* nor seized a .50 caliber rifle and has provided *no* evidence whatsoever of the rifle's existence, of its illegality, or its relevance to this case. *See* Doc. 91-1, at 3, ¶ 5.a.v (testimony of SA Nathan Sorenson) ("No .50 caliber rifle was found during the search of the residence or vehicle.").

- The government points out that during Mr. Justices UCMJ release hearing, his squadron commander believed there was a greater than 50% chance Mr. Justice would present a flight risk, given the nature of the offense, and that there was a greater than 50% chance Mr. Justice would "commit other serious crimes". Doc. 91, ¶ 5. These unsupported *beliefs* -- or gut feelings – were proven *wrong* by Mr. Justice's own conduct. Mr. Justice was released on his own recognizance in the UCMJ case. He *did not flee*, and did not commit *any* criminal offenses, serious or minor. As such, the inclusion of this baseless and unsubstantiated prediction is irrelevant and prejudicial.

Inexplicably, in its Response, the government describes Mr. Justice's response to a Letter of Reprimand ("LOR") as evidence of some undefined nefarious intent or undefined dangerous predisposition on the part of Mr. Justice. Doc. 91, at 8. Specifically, the government describes Mr. Justice's LOR response as a "4-page diatribe defending his own failure to comply and pointing out other instances of noncompliance of others". Id. On the contrary, the applicable

5

military regulation provided Mr. Justice the right to respond, and respond candidly, to the proposed administrative action – which is in fact what he did. Air Force Instruction 36-2907, Adverse Administrative Actions, at 1.2.6., Dept. of the Air Force (May 22, 2020), https://bit.ly/3vH8IqI.

What the government refers to as a "diatribe" is simply Mr. Justice exercising his lawful and peaceful right, in an administrative proceeding, to defend himself in writing as to the proposed LOR, explain his version of events, and to provide mitigating information. *Id.* at 3.4.2.2.

The government again pursues this pattern of bashing Mr. Justice for doing nothing wrong when it apparently takes issue with Mr. Justice having filed a motion to suppress in this case. Doc. 91, at 10. The suppression motion in this case was filed on advice of counsel. As a non-lawyer, Mr. Justice should not be criticized for consenting to his counsel's recommendation to file and litigate a suppression motion in his case. *Williams v. Lord*, 996 F.2d 1481, 1483 (2d Cir. 1993) (*quoting Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) (citations omitted); *see* U.S. Const. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.").

### C. Expert Forensic Analysis Has Debunked the Relevance of the Content Seized from Mr. Justice's Phone

The government misleadingly floods its Response with irrelevant photos retrieved from Mr. Justice's cell phone. Doc. 91-3.[1]  The government thereafter engages again in speculation as to what Mr. Justice "may have been planning."  Doc. 91, at 9.

> A finding in a sentencing case 'must be based on evidence before the court, and thus in the record, and not on speculation or hypothesis.' *United States v. Moore*,

---

[1] *See* Doc. 62 and 62-1, Defendant's Response to Government's Motion to Admit Intrinsic Evidence and Evidence Pursuant to Federal Rule of Evidence 404(b) and Exhibit A, Sarah McDermott, Forensic Pursuit, Report of Forensic Examination.

> 666 F.3d 313, 322 (4th Cir. 2012); *see also United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) ('Sentencing judges necessarily have discretion to draw conclusions about the testimony given and evidence introduced at sentencing, but due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.' (quotation omitted)).

*United States v. Delgado-Lopez*, 974 F.3d 1188, 1193, 2020 U.S. App. LEXIS 29032, *8 (10th Cir. 2008).

Importantly, *not one* of the many witnesses interviewed by both the government and Mr. Justice's counsel attributed to Mr. Justice *in any way*, the sentiments or political views described by the government in its Response (Doc. 91, at 9). Not one person connected Mr. Justice in any way with racism, white supremacy, violence, or the glorification of mass shooters.

Of equal importance, the government concedes that the "materials found on Defendant's phone are not evidence of a crime." Doc. 91, at 6. The government also provides *no* evidence beyond its own conclusory statements, its own speculation, that Mr. Justice had read or even knew about these images, viewed them, shared them, or interacted with them in any way. On the contrary, Sara McDermott, the defense retained forensic expert, "did not locate any evidence that Mr. Justice intentionally sought out any of the subject sixty-five files (sixty-four images and one four-page document)." Doc. 62-1, at 1, Report of Forensic Examination. Referencing Exhibit 2 of the government's Motion to Admit Extrinsic Evidence (Doc. 52-2), which is the same content attached to the government's Response here (Doc. 91-3, Ex. C). It is also important to note that the 64 objectionable images which the government highlights to paint a "possible" violent or racist picture of Mr. Justice are but a fraction of the 21,061 images actually contained on Mr. Justices cell phone. Doc. 62-1, at 1.

In this regard, Ms. McDermott further concluded:

> No evidence was located that Mr. Justice authored or posted any of the Instagram posts contained in Exhibit 2. Furthermore, nothing in the screenshots indicate which user account was logged in at the time the screenshot was taken.
>
> Forensic Pursuit did not locate any evidence of Mr. Justice liking or commenting on the Instagram posts depicted in the screenshots in Exhibit 2.
>
> No evidence was located suggesting Mr. Justice was communicating with the users in the Instagram posts depicted in the Exhibit 2.

Doc. 62-1, at 1-2, Report of Forensic Examination. Ms. McDermott concluded,

> Thirty of the sixty-five files identified by the Government (pages 22-24, the second image on page 26 and pages 27-39) originated from the download of a zip folder titled 'Fun Stuff' hosted on the MEGA platform. A link to this folder is contained in the biography of the Instagram account for the *steviewonderbubble* user, which Mr. Justice reportedly followed on Instagram…. In addition, the ZIP files contained on Mr. Justice's device under the MEGA Downloads folder are consistent with the ZIP files contained in the 'Fun Stuff' folder hosted on MEGA.
>
> The screenshots of the Instagram posts depicted on pages 22-24, the second image on page 26 and pages 27-39 of Exhibit 2 were all copied on 01/20/20 at 10:16:50AM to the 'ALL GUN STUFF' folder. These files are in the MEGA 'Fun Stuff' zip folder contained in the link on *steviewonderbubble*'s Instagram account, consistent Mr. Justice downloading this file.

In other words, while seeking a single file from a person he follows on Instagram, Mr. Justice likely downloaded an entire "zip file" which included files and images not intentionally sought by Mr. Justice. A "zip file" is one which includes a number of compressed files, some of which may be files unknown to or unwanted by the user.[2] A similar act of downloading files which were not sought, would be when one downloads a "zip" file from Pacer which includes a motion and all of the exhibits associated with that motion, even when the party may be seeking to review only one of the exhibits.

Ms. McDermott's thorough analysis of the content found on Mr. Justice's cell phone makes clear that there is no evidence that Mr. Justice was in fact aware or had viewed, much less

---

[2] Zip and Unzip Files, Microsoft Support, https://bit.ly/3i3jFi7 (last visited May 31, 2021).

8

commented upon, all the objectionable content attributed to him by the government. In contrast with his actual life history and positive and respectful interactions with people of all races and religions, the government continues to base its argument against a downward variance on speculation about Mr. Justice having racist or religiously intolerant views and an unfounded concern about what Mr. Justice "might" have been planning.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Mr. Justice respectfully requests that this Court grant a downward variance based on a consideration of the factors outlined in 18 U.S.C. § 3553(a) and warranting a sentence in this case of time-served.

Respectfully Submitted,

*/s/ Joe M. Romero, Jr.*
Joe M. Romero, Jr.
Romero & Winder, PC
Attorney for Julian Lucas Garcia
P.O. Box. 25543
Albuquerque, N.M. 87125
(505) 843-9776
EM: joe@romeroandwinder.com

### Certificate of Service

I hereby certify that, on June 5, 2021, the foregoing pleading was filed electronically pursuant to CM/ECF procedures for the District of New Mexico, which caused the parties and/or their counsel to be served by electronic transmission, as more fully reflected by the Notice of Electronic Filing.

*/s/ Joe M. Romero, Jr.*
Joe M. Romero, Jr.